UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MICHAEL PARRELLA and ILKB, LLC,<br><br>Petitioners,<br><br>v.<br><br>THE ORANGE RABBIT, INC. and<br>NICHOLAS GIACOPELLI,<br><br>Respondents. | |

| |
|---|
| THE ORANGE RABBIT, INC. and<br>NICHOLAS GIACOPELLI,<br><br>Cross Claimants,<br><br>v.<br><br>MICHAEL PARRELLA, RYAN HEALY,<br>SCOTT FERRARI, and ILKB, LLC,<br><br>Cross Defendants. |

```
┌─────────────────────────────────┐
│ USDC-SDNY                        │
│ DOCUMENT                         │
│ ELECTRONICALLY FILED             │
│ DOC#:                            │
│ DATE FILED: 09/29/2021           │
└─────────────────────────────────┘
```

20-CV-9923 (RA)

OPINION & ORDER

RONNIE ABRAMS, United States District Judge:

Following an unsuccessful foray into kickboxing-gym ownership, franchisee Nicholas Giacopelli and his company The Orange Rabbit Inc. ("Orange Rabbit") commenced arbitration against franchisor ILKB LLC ("ILKB") and three of its executives: Michael Parrella, Scott Ferrari, and Ryan Healy.  After an arbitrator found in Giacopelli and Orange Rabbit's favor and awarded them millions of dollars in damages, Parrella—later joined by ILKB—moved to vacate the award.  Parrella and ILKB claim that the Arbitrator committed misconduct and exceeded his powers in violation of § 10(a) of the Federal Arbitration Act ("FAA").  Giacopelli and Orange Rabbit have opposed the petition and have filed a

cross-motion to confirm the arbitration award.  For the reasons provided below, the motion to vacate the award is DENIED and the cross-motion to confirm the award is GRANTED.

## BACKGROUND

The following facts are drawn from the amended petition to vacate the arbitration award, Dkt. 16 ("Am. Pet."), as well as the exhibits filed in conjunction with the declarations of David Douglas, Dkt. 23 ("Douglas Decl.") and Roy Lester, Dkt. 17 ("Lester Decl.").

Michael Parrella is the founder and former chief executive officer of ILKB, a fitness franchising brand that sells and supports a chain of kickboxing studios under the name "iLoveKickboxing.com." Am. Pet. at ¶¶ 1, 14.  Although it is unclear when Parrella left ILKB, it appears that he was the company's CEO at least through April 15, 2020.  Douglas Decl. Ex. 21 at 7 ("Scheduling Order No. 23").[1]

In April 2016, Nicholas Giacopelli—through his company Orange Rabbit—entered into a franchise agreement with ILKB to purchase an iLoveKickboxing franchise.  Am. Pet. at ¶ 17; Lester Decl. Ex. B ("Franchise Agreement").  In May 2016, Giacopelli—again through Orange Rabbit— entered into a multi-outlet agreement with ILKB to purchase two more franchises.  Lester Decl. Ex. C ("Multi-Outlet Agreement").

The Agreements contain several provisions relevant to the instant action.  In the Franchise Agreement, the parties pledged to attempt to resolve any disputes arising out of or relating to the Franchise Agreement by first having officers and principal equity owners meet and conduct a good faith negotiation. Franchise Agreement at 30 (§ 14.1(a)).  The Agreement further provides that "[a]ny dispute between us (and/or our affiliated entities) and you (and/or your affiliated entities) that is not resolved through mediation will be resolved through binding arbitration."  *Id*. at 30 (§ 14.2(a)).  The arbitration proceedings are to be "conducted individually by a single plaintiff, and not as a class or by multiple

---

[1] This scheduling order was incorrectly titled "Scheduling Order No. 22" when originally published to the parties, but the Arbitrator later confirmed it should have been titled "Scheduling Order No. 23."  *See* Douglas Decl. Ex. 1 at 14 n.9 ("Final Award").

plaintiffs in one action." *Id*. at 31 (§ 14.2(b)).  The Franchise Agreement also grants "[t]he arbitrator . . . the right to award or include in the award any relief that the arbitrator deems proper in the circumstances," *id*. (§ 14.2(c)), and provides that "[t]he prevailing party in any arbitration or litigation to resolve a dispute between any of the parties thereto will be entitled to recover from the losing party reasonable legal fees," *id*. (§ 14.4).  The Agreement provides that any disputes arising under it must be governed by the FAA, or New York law if the FAA does not apply.  *Id*. at 36 (§ 16.13).  The Multi-Outlet Agreement provides that any dispute arising under it must be resolved in accordance with the dispute resolution procedures in the Franchise Agreement.  Multi-Outlet Agreement at 6 (§ 7.1).

Despite "operating in a fiscally sound manner," Giacopelli's kickboxing franchises continuously lost money.  Douglas Decl. Ex. 1 at 4 ("Final Award"); Lester Decl. Ex. T (same).  On March 27, 2019, Giacopelli and Orange Rabbit commenced arbitration against Parrella, ILKB, Ferrari (ILKB's President), and Healy (ILKB's Vice President).  Lester Decl. Ex. D ("Arbitration Demand").  They claimed that Parrella, Ferrari, and Healy fraudulently induced them to purchase the franchises by, *inter alia*, knowingly and deliberately making false representations about the financial prospects of the business, including the expense of opening and operating it, the expected performance of the studios, and the likely resale value of the franchises.  *Id*. at 5–6.  The Arbitration Demand included common law causes of action for fraudulent representation, negligent misrepresentation, and breach of contract, as well as claims under the New York State Franchise Sales Act, the New Jersey Franchise Practices Act, and the New Jersey Consumer Fraud Act.  *Id*. at 7–11.

Initially, Parrella, ILKB, Ferrari, and Healy were represented in the arbitration by Thomas Telesca of Ruskin Moscou Faltischek P.C.  Am. Pet. at ¶ 24.  In April, 2019, Telesca moved to dismiss the arbitration demand on the grounds that the Franchise Agreement mandated "face-to-face" negotiations, followed by JAMS mediation, before pursuing arbitration.  Pet. Mem., Dkt. 18, at 13–14.  The Arbitrator granted the application in part.  Douglas Decl. Ex. 4 at 13 ("Scheduling Order No. 2").

Shortly thereafter, Telesca informed the Arbitrator that he would no longer represent Parrella, ILKB, Ferrari, and Healy.  Douglas Decl. Ex. 5 at 3 ("Scheduling Order No. 3").

On or around July 26, 2019, Parrella, Healy, and ILKB obtained new counsel.  Douglas Decl. Ex. 6 at 3 ("Scheduling Order No. 4").[2]  In a September 5, 2019 status conference, their lawyer raised the possibility that he would challenge the arbitrability of the claims against Parrella and Healy in his forthcoming answer to the arbitration demand.  *See* Scheduling Order No. 23 at 10.  In a scheduling order filed later that same day, the Arbitrator mandated that "[i]f respondents intend to move to dismiss Messrs. Parrella and Healy for lack of arbitrability, they are to file their motion by September 19, 2019."  Douglas Decl. Ex. 7 at 4 ("Scheduling Order No. 5").

On September 11, Parrella, ILKB, and Healy's answer to the arbitration demand was filed. Douglas Decl. Ex. 9 ("Answer"); Lester Decl. Ex. E (same).  The answer raised ten affirmative defenses. Answer at 2–3.  It also raised cross-claims against Ferrari.  *Id*. at 4–5.  The answer did not include any challenge to the arbitrability of the claims against Parrella or Healy.

After the answer was filed, the parties then paused arbitration to pursue settlement, but the settlement efforts were unsuccessful.  Am. Pet. at ¶ 25.

On December 10, 2019, in response to a motion by Parrella, Healy, and ILKB to indefinitely suspend arbitration, the Arbitrator agreed to adjourn the hearing until February 17, 2020, to allow for additional discovery.  Douglas Decl. Ex. 10 at 6 ("Scheduling Order No. 7").

On January 8, 2020, Parrella, Healy, and ILKB's counsel withdrew.  Am. Pet. ¶ 27; Douglas Decl. Ex. 11 ("Scheduling Order No. 7A").  The Arbitrator then gave the parties until January 13 to suggest an appropriate amount of time to obtain new counsel.  Scheduling Order No. 7A at 3–4.

---

[2] Ferrari appears to have remained unrepresented after counsel withdrew, and he did not participate at all in the arbitration after January 2020. *See* Am. Pet. at ¶ 24, Final Award at 5.

4

After January 8, 2020, neither Healy nor Ferrari took part in the arbitration. *See* Final Award at 5. Healy and Ferrari also have declined to participate in this litigation in any capacity thus far, although they are cross-defendants to the petition to confirm.

On January 13, the Arbitrator issued another scheduling order, granting Parrella, ILKB, and Healy until January 27 to retain new counsel and informing them that the arbitral hearing was still scheduled to start February 17.  Douglas Decl. Ex. 12 at 3–4 ("Scheduling Order No. 8").[3]

On January 28, 2020, attorneys from Nixon Peabody LLP appeared on behalf of ILKB.  Lester Decl. Ex. F at 1 ("January 28 Deane Letter").  They represented that they were seeking to obtain counsel for Parrella and Healy, which they ultimately failed to do.  *Id.*  Upon request, the Arbitrator accordingly extended Parrella's deadline to find counsel until February 4, but warned the parties that "[i]f any parties do not arrange for counsel by February 4, 2020, they will be deemed to be proceeding *pro se* at that time."  Douglas Decl. Ex. 13 at 4 ("Scheduling Order No. 9").

On February 10, the Arbitrator issued another scheduling order in response to ILKB's request to adjourn the arbitral hearing until March 23.  *See* Douglas Decl. Ex. 14 at 4 ("Scheduling Order No. 10"). The Arbitrator granted the motion, "conclud[ing] that setting the hearing for the week of March 23, 2020 w[ould] be conducive to a more orderly and fair proceeding, by allowing the new counsel for ILKB to familiarize themselves with the details of the case."  *Id.*  The Arbitrator also noted that the extension would give the defendants, including Parrella—"who [had] remained silent since their prior counsel withdrew from the case some time ago"—the opportunity to prepare.  *Id.*  The order concluded that "**[t]he scheduling of the hearing for the week of March 23, 2020 is firm. No further adjournments should be anticipated**."  *Id.* (bold in original).

_____

[3] This order, as well as all other scheduling orders issued during the time in which participants in the arbitration were unrepresented, was sent directly to those participants via email.  *See, e.g.,* Scheduling Order No. 8 at 3; Douglas Decl. Ex. 13 at 3 ("Scheduling Order No. 9"); Douglas Decl. Ex. 14 at 3 ("Scheduling Order No. 10"); Douglas Decl. Ex. 15 at 3 ("Scheduling Order No. 14").

On March 19, ILKB sought an indefinite adjournment of the arbitral hearing in light of the emerging COVID-19 pandemic. Douglas Decl. Ex. 15 at 3 ("Scheduling Order No. 14"). Although the Arbitrator acknowledged the severity of the public health crisis, he denied the motion. *Id*. at 3–4. The Arbitrator ordered that the arbitral hearing be conducted "in a revised format [i.e., by video conference] to accommodate the current circumstance of a nation-wide pandemic." *Id*. at 4. He stated his reasoning for the arbitral hearing to proceed as scheduled, namely, that the arbitration had already been long delayed, the arbitral hearing would be structured in a way to ensure a fair proceeding for all parties, and the underlying policy of arbitration—to promptly achieve finality—would not be served by further delay. *Id*. at 4. Following this order, Parrella claims he was never given instructions on how to access the remote hearing, nor was technological preparation made available. Pet. Mem. at 16 n.3. Giacopelli and Orange Rabbit assert, however, that the Arbitrator conducted a telephone conference to discuss logistics in March 2020, at which counsel for ILKB was present, although Parrella was not. Resp. Mem., Dkt. 22, at 9.

On March 20, Parrella sent the Arbitrator an email stating that although he had previously struggled to find an attorney due to the pandemic, he had recently retained counsel. Lester Decl. Ex. H ("March 23 Parrella Email"). He asked for an indefinite adjournment of the arbitral hearing to give him "time to meet with [his] attorney before th[e] arbitration." *Id*. He noted that "with all that's going on," he had thus far been unable to do so. *Id*. The Arbitrator denied the motion and stated that Parrella had "been given ample time to obtain new counsel after the withdrawal of the prior attorney, and in the interim he has neither done so nor communicated with the Arbitrator or counsel for any of the other parties," and that the "last-minute effort [to delay the arbitral hearing] seem[ed] plainly designed to encourage further delay, and [would] not be countenanced." Douglas Decl. Ex. 16 at 4 ("Scheduling Order No. 15"). The Arbitrator similarly denied ILKB's renewed motion to indefinitely adjourn the

arbitration, acknowledging the "extraordinary state of affairs" caused by the pandemic, but concluding that ILKB's lawyers would be equipped to handle the hearing as scheduled.  *Id*.

Three days later, on March 23, the Arbitrator received an email from Parrella's newly-retained attorneys, Lester & Associates P.C., requesting an indefinite postponement of the hearing "in light of the COVID 19 situation."  Lester Decl. Ex. I ("March 23 Lester Email").  The Arbitrator denied the motion, noting that it mirrored Parrella and ILKB's prior motions and provided no reason to revisit those decisions.  Douglas Decl. Ex. 18 at 3 ("Scheduling Order No. 16").[4]  The arbitration began that day; neither Parrella nor his counsel attended.

On March 25, ILKB filed a renewed motion to adjourn the arbitral hearing—which at that point had already begun—asserting that hard copies of certain relevant documents were in their office and they could not retrieve them without violating the Governor's stay-at-home order.  Douglas Decl. Ex. 17 at 4 ("Scheduling Order No. 18"); *see also* Lester Decl. Ex. G ("New York State Executive Order 202").  The Arbitrator denied the request, reasoning that ILKB could overcome this difficulty by arranging to have the documents delivered, asking opposing counsel to fax the documents to them, or reserving time to complete the cross examination at a later time when the documents were available.  Scheduling Order No. 18 at 5.

On March 27, the Arbitrator issued a scheduling order extending the parties' time to call a witness until March 30.  Douglas Decl. Ex. 19 at 4 ("Scheduling Order No. 19").

Ultimately, the arbitral hearing ran from March 23 through April 1 on Zoom.  *See* Scheduling No. 18 at 5; Scheduling Order No. 19 at 4.  At no point were Parrella or his counsel present, although ILKB's counsel participated. Pet. Mem. at 8–9.

---

[4] In his Final Award, the Arbitrator noted that at some point during the arbitration, he stated that "if there are specific circumstances that necessitate a delay of whatever sort, be it a specific brief delay or a longer delay, and if those are brought to my attention, I will be happy to consider it."  Final Award at 20.

On April 1, after the arbitral hearing had terminated, Parrella's attorney filed another motion to adjourn the proceedings, this time for forty-five days, asserting that because he was newly retained and because his work had been slowed by the pandemic, he needed more time to familiarize himself with the materials and to prepare his client's case.  Douglas Decl. Ex. 20 at 2 ("April 1 Lester Letter"); *see also* Lester. Decl. Ex. J (same).  He also asserted in this letter—for the first time—that the claims against Parrella were not arbitrable.  *Id*.  The Arbitrator denied the motion and rejected the arbitrability argument, concluding that Parrella had "plainly waived this defense" by participating in the arbitration.  Scheduling Order No. 23 at 8.  The Arbitrator reasoned that not only had Parrella failed to raise this defense earlier, but he had brought his own claims against Ferrari before the Arbitrator, which indicated that he consented to the arbitration.  *Id*. at 11–12.

Parrella and ILKB each filed a post-hearing brief through their respective counsel.  Am. Pet. at ¶¶ 42–44; Lester. Decl. Ex. K–N.  In Parrella's submission, he argued that Giacopelli and Orange Rabbit lacked standing to arbitrate their claims—Giacopelli because he was not party to the Franchise Agreement and Orange Rabbit because the alleged misrepresentations were made before Orange Rabbit was formed.  Lester Decl. Ex. M ("Parrella's Post-Hearing Brief") at 10–11.  He also challenged Giacopelli and Orange Rabbit's ability to proceed in a single arbitration on the grounds that the Franchise Agreement provided for arbitration to be conducted only by a single plaintiff.  *Id*.  Lastly, he asserted that Giacopelli and Orange Rabbit had failed to prove their claims against Parrella on the merits.  *Id*. at 12–31.  He did not make an arbitrability argument with respect to himself as an individual, although he noted that "the submission of this Brief (solely to note material issues warranting dismissal of any claims against Parrella) should not be construed as an admission of the regularity of these proceedings, which Parrella reserves the right to challenge."  *Id*. at 8.

The Arbitrator issued a 52-page Partial Award on June 17, 2020, which granted compensatory damages of $791,011.84 in favor of Orange Rabbit and Giacopelli against Parrella, ILKB, Ferrari, and

Healy, jointly and severally, under Section 691 of the New York Franchise Sales Act, and determined that Orange Rabbit and Giacopelli were entitled to an award of pre-judgment interest, reasonable attorneys' fees and costs under Section 691 and the Franchise Agreement, as well as reimbursement for any advances made for JAMS fee obligations. Douglas Decl. Ex. 3 ("Partial Award"); Lester Decl. Ex. A (same).

In response to the Arbitrator's request, on September 14, Giacopelli and Orange Rabbit filed a supplemental submission for pre-judgment interest, attorneys' fees, and costs, Lester Decl. Ex. P, to which Parrella and ILKB filed a joint objection on September 29, 2020. Lester Decl. Ex. Q. In the opposition, Parrella and ILKB restated their argument that it was improper to proceed with arbitration in light of the pandemic and argued that not giving Parrella an adjournment to allow his counsel to become familiar with the case was a denial of due process. *Id*. at 5. Parrella also argued that he was not personally liable for fees because he was not party to the Franchise Agreement. *Id.* at 6.

The Arbitrator issued a 65-page Final Award on November 16, 2020, which granted compensatory damages of $791,011.84 in favor of Orange Rabbit and Giacopelli against Parrella, ILKB, Ferrari, and Healy, jointly and severally, under Section 691 of the New York Franchise Sales Act and the common law governing fraud in the inducement and negligent misrepresentation; and granted additional amounts in favor of Orange Rabbit and Giacopelli against Parrella, ILKB, Ferrari, and Healy in said Arbitration for a total of $393,582.69, consisting of: $179,714.52 in pre-judgment interest, $143,387.00 in attorneys' fees, $2,686.60 in interest on attorneys' fees, and $67,794.57 in costs. *See generally* Final Award.

On November 25, 2020, Parrella filed a petition to vacate the arbitration award, alleging that the Arbitrator committed misconduct by (1) refusing to adjourn the arbitral hearing and (2) exceeding his powers in numerous ways. Dkt. 1. On December 16, upon receiving the Arbitrator's Final Award, Parrella filed an amended petition. Dkt. 16. On January 15, 2021, Giacopelli and Orange Rabbit filed a

cross motion to confirm the arbitration award.  Dkt. 21.  They also moved to join Healy, Ferrari, and

ILKB as cross-defendants in their cross-motion against Parrella.  *Id.*  The Court granted the joinder

motion, and allowed Healy, Ferrari, and ILKB until May 15 to either join Parrella's petition to vacate or

file their own.  Dkt. 30.  On June 1, ILKB filed a motion to join Parrella's petition, which was granted.

Dkt. 39.  Healy and Ferrari neither joined Parella's petition nor filed on their own.

## LEGAL STANDARD

Arbitration awards are subject to "very limited review in order to avoid undermining the twin

goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation."

*Folkways Music Publishers, Inc. v. Weiss*, 989 F.2d 108, 111 (2d Cir. 1993).  "A party moving to vacate

an arbitration award has the burden of proof, and the showing required to avoid confirmation is very

high." *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006).  Under the FAA, an award

may be vacated only in the following circumstances:

> (1) where the award was procured by corruption, fraud, or undue means;
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).

## DISCUSSION

Parrella and ILKB contend that the arbitration award should be vacated because the Arbitrator

violated both § 10(a)(3) and § 10(a)(4) of the FAA.  The Court will discuss these claims in turn.

## I.   Section 10(a)(3): Refusal to Postpone an Arbitral Hearing

Parrella and ILKB allege that the Arbitrator violated Section 10(a)(3) by refusing to adjourn the

arbitral hearing, which began on March 23, 2020.  Pet. Mem. at 13–14.  Although the Arbitrator granted

several earlier applications to postpone the hearing, *see* Scheduling Order No. 10 at 2–3,  he denied the

following: (1) ILKB's March 19 request for an indefinite adjournment in light of the COVID-19 pandemic; (2) Parrella's March 20 request for an indefinite adjournment to allow him "time to meet with" his newly-retained attorney; (3) Lester's March 23 application to indefinitely postpone the arbitral hearing "in light of the COVID 19 situation;" (4) ILKB's March 25 renewed motion to adjourn the hearing due to inability to access documents; and (5) Lester's April 1 motion for a 45 day adjournment of the proceedings to allow him to familiarize himself with the relevant materials.

"The granting or denying of an adjournment falls within the broad discretion of appointed arbitrators." *Storey v. Searle Blatt, Ltd.*, 685 F. Supp. 80, 82 (S.D.N.Y. 1988). Under prevailing Second Circuit law, if "there exists 'a reasonable basis for the arbitrator['s] considered decision not to grant a postponement,' a court should be reluctant to interfere with the award." *Ottawa Office Integration Inc. v. FTF Bus. Sys., Inc.*, 132 F. Supp. 2d 215, 220 (S.D.N.Y. 2001) (quoting *Roche v. Local 23B–32J Serv. Employees Int'l Union*, 755 F. Supp. 622, 625 (S.D.N.Y. 1991)). In other words, "as long as there is at least 'a barely colorable justification' for the arbitrator['s] decision not to grant an adjournment, the arbitration award should be enforced." *Bisnoff v. King*, 154 F. Supp. 2d 630, 637 (S.D.N.Y. 2001) (citation omitted). Furthermore, "[v]acatur under 9 U.S.C. § 10(a)(3) is warranted only when the arbitration proceedings were 'fundamentally unfair.'" *Glob. Gold Min., LLC v. Ayvazian*, 612 F. App'x 11, 14 (2d Cir. 2015) (quoting *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*, 729 F.3d 99, 107 (2d Cir.2013)).

Here, the Arbitrator was justified in denying further adjournments, and doing so did not render the proceedings fundamentally unfair. The Arbitrator denied the applications to adjourn the arbitral hearing due to COVID-19 upon finding that the conditions posed by the pandemic would not prevent the parties from having a fair hearing by video conference. *See*, *e.g.*, Scheduling Order No. 14 at 4 (ruling that the arbitral hearing would go forward via Zoom on the date previously scheduled because "the hearing can, as noted, be structured in a way to serve all parties' legitimate interests in a fair

proceeding"). When specific issues arose—for example, ILKB's claim that its counsel could not access certain documents due to the "stay at home" order—the Arbitrator provided specific solutions that would allow the hearing to continue fairly (in this instance, noting that the parties could arrange to have the documents delivered, fax the documents between each other, or reserve time to complete the relevant witness's examination at a later time when the documents were available). Scheduling Order No. 18 at 5. The Arbitrator also expressed willingness to reconsider his pandemic-related ruling should additional pandemic-related issues be brought to his attention. *See* Final Award at 19. None were.

The Arbitrator had a reasonable basis to deny Parrella an adjournment in order to have more time to prepare. Scheduling Order No. 15 at 3. The Arbitrator had already adjourned the hearing several times to accommodate ILKB and the individual defendants prior to March 2020. *See* Scheduling Order No. 7 at 6, Scheduling Order No. 10 at 4. Parrella also had ample notice of the arbitral hearing. Although he was unrepresented during the period of time immediately preceding the hearing, he was sent all scheduling orders issued during this time via email. *See, e.g.*, Scheduling Order No. 8 at 2–3; Scheduling Order No. 9 at 4; Scheduling Order No. 10 at 4; Scheduling Order No. 14 at 4. And although he was seemingly not present for any of the scheduling conferences held in the run up to the arbitration, it appears it was his choice not to attend; indeed, he has submitted no evidence—nor does he make any claim—to the effect that he was unable to attend these conferences. Moreover, Parrella remained the CEO of ILKB during this time, and counsel for ILKB appears to have attended these conferences and was in regular communication with the Arbitrator during this time. *See* Final Award at 16–17. Even if ILKB's counsel did not represent Parrella, it strains credulity to conclude that, having been sent emails and in light of his position as ILKB's CEO, he would have had no notice that these conferences were occurring.

Furthermore, Parrella was given a clear deadline to retain new counsel, for which he never requested an extension. Scheduling Order No. 9 at 4. Due to the broad discretion afforded to arbitrators

to grant or deny adjournments, courts in this District have denied motions to vacate where pro se parties were denied adjournments to seek replacement counsel. *See, e.g.*, *Webb v. Citigroup Glob. Markets, Inc.*, No. 19 Civ. 535 (PAE), 2019 WL 4081893, at \*7–\*8 (S.D.N.Y. Aug. 29, 2019) (confirming arbitration award where arbitration panel denied request to adjourn for a party to hire new counsel, find witnesses, and gather documents); *Carroll v. Wells Fargo Clearing Servs., LLC*, No. 20 Civ. 4918 (PKC), 2021 WL 634721, at \*3–\*4 (S.D.N.Y. Feb. 17, 2021) (confirming arbitration award where Arbitrator denied post-hearing adjournment request by *pro se* party). For the foregoing reasons, the refusal to adjourn likewise did not "make the arbitration fundamentally unfair." *Kolel Beth Yechiel Mechil*, 729 F.3d at 107 (2d Cir. 2013); *see also Carroll*, 2021 WL 634721, at \*4.

To allow Parrella to escape an otherwise proper arbitration award by failing to comply with a firm and well-communicated deadline would violate the twin goals of arbitration and would provide future litigants unwarranted grounds to set aside an adverse ruling. In sum, the Court concludes the Arbitrator was not guilty of misconduct and the arbitration was not rendered "fundamentally unfair" by his refusal to adjourn the hearing a third time. Accordingly, there are no grounds under 10(a)(3) to vacate the arbitration award.

## II.   Section 10(a)(4): Exceeding His Powers

### A.   Standard of Review to Vacate an Award Under § 10(a)(4)

Parrella and ILKB claim that the Arbitrator violated § 10(a)(4) of the FAA by acting beyond his authority in four respects: (1) arbitrating the claims against Parrella when Parrella was not a party to the Franchise Agreement; (2) adjudicating Giacopelli's claims when Giacopelli was likewise not a party to the Franchise Agreement; (3) arbitrating Giacopelli and Orange Rabbit's claims together when the Franchise Agreement provided that claims could be brought only by a single plaintiff; and (4) awarding attorneys' fees and costs without a contractual or statutory basis to do so. Am. Pet. at ¶ 69.

13

A court will vacate an arbitration award under FAA § 10(a)(4) if it finds that an arbitrator "exceeded [his or her] powers" to such a degree that "that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4).  The Second Circuit has consistently read this section narrowly, cautioning that courts should review whether the arbitrator had the power to reach an issue, not whether the issue was rightly decided.  *See Jock v. Sterling Jewelers Inc.*, 646 F.3d 113, 122 (2d Cir. 2011). "An award will not be vacated even where there is 'serious error,' but only where the panel 'effectively dispense[s] [its] own brand of industrial justice.'"  *KT Corp. v. ABS Holdings, Ltd.*, 784 F. App'x 21, 24 (2d Cir. 2019), *cert. denied*, 140 S. Ct. 1115 (2020) (alterations in original) (quoting *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010)).  The moving party faces a "high hurdle" under this standard because "as long as the arbitrator [was] even arguably construing or applying the contract and acting within the scope of his authority" the decision will not be overturned. *See Jock*, 646 F.3d at 122 (internal citations and quotations omitted).

To resolve the issues raised by Parrella and ILKB, the Court must first decide whether the Court or the Arbitrator has authority to determine whether the parties agreed to arbitrate.

### 1.    The Signatories Demonstrated a Clear and Unmistakable Intent to Have the Arbitrator Decide Questions of Arbitrability

The deferential standard of Section 10(a)(4) only applies when the parties have agreed to submit the issues to the arbitrator.  Because arbitration is dictated by contract, courts must respect the parties' decisions regarding delegation of issues to the arbitrator.  *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529–30, 202 L. Ed. 2d 480 (2019) ("Just as a court may not decide a merits question that the parties have delegated to an arbitrator, a court may not decide an arbitrability question that the parties have delegated to an arbitrator.").  In addition to deciding the scope of arbitration, parties are able to delegate determinations regarding arbitrability to an arbitrator.  *See First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938 (1995).  In deciding questions of contract formation or the parties' intent, state-law principles ordinarily govern.  *Id.* at 944, *see also Shaw Grp. Inc. v. Triplefine Int'l Corp.*, 322 F.3d

115, 121 (2d Cir. 2003). Because the Franchise Agreement here stated that the FAA governed the contract, and if not the FAA, then New York State law, New York contract law would typically govern formation disputes. Franchise Agreement at 36 (§16.13). When determining whether parties have agreed to have arbitrability decided by an arbitrator, however, the Supreme Court has noted an additional qualification: "Courts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so." *First Options*, 514 U.S. at 944 (internal quotations omitted).[5]

The clear and unmistakable intent of the parties can be inferred from the language of the agreement. When an arbitration agreement includes "[b]road language expressing an intention to arbitrate all aspects of all disputes," that language supports "the inference of an intention to arbitrate arbitrability." *Metro. Life Ins. Co. v. Bucsek*, 919 F.3d 184, 191 (2d Cir. 2019), *cert. denied*, 140 S. Ct. 256, 205 L. Ed. 2d 134 (2019). Incorporation of arbitration rules that grant an arbitrator the power to decide issues of arbitrability is also strong evidence that the parties intended to assign arbitrability to the arbitrator. *DDK Hotels, LLC v. Williams-Sonoma, Inc.*, 6 F.4th 308, 318 (2d Cir. 2021). As the Second Circuit stated in *DDK Hotels*, "where the arbitration agreement is broad and expresses the intent to arbitrate all aspects of all disputes, this—coupled with incorporation of rules that expressly empower an arbitrator to decide issues of arbitrability—constitutes clear and unmistakable evidence of the parties' intent to delegate the question of arbitrability to the arbitrator." *Id.* at 318–19.

Here, the arbitration agreement both defines arbitrable issues broadly and incorporates rules granting the Arbitrator authority to decide arbitrability. The Franchise Agreement defines "Dispute" as "any dispute, claim or controversy arising out of or relating to this Agreement or any agreed breach hereof, including any claim that this Agreement or any part hereof is invalid, illegal or otherwise voidable

---

[5] Here, this "additional" qualification is identical to New York law, which requires that the parties "evince[ ] a 'clear and unmistakable' agreement to arbitrate arbitrability." *Shaw*, 322 F.3d at 121 (quoting *Smith Barney Shearson Inc. v. Sacharow*, 91 N.Y.2d 39, 45–46, 666 N.Y.S.2d 990, 993 (1997)).

or void." Franchise Agreement at 30 (§ 14.1(a)).  In Section 14.2, the contract states that any "Dispute between us (and/or our affiliated entities) and you (and/or your affiliated entities) that is not resolved through mediation will be resolved through binding arbitration." *Id.* at 30 (§ 14.2).  That the agreement contemplates issues "related to" the agreement and claims the agreement itself is "invalid" or "void" would be decided by the arbitrator suggests a delegation of arbitrability questions.

The JAMS Rules are incorporated as the default arbitration rules by Section 14.2 of the Franchise Agreement, which states that arbitration for disputes where more than $250,000 is in controversy shall be conducted according to the JAMS Comprehensive Arbitration Rules and Procedures.  Franchise Agreement, at 30 (§ 14.2).  Under these rules, the arbitrator is given the power to decide questions of arbitrability:

> Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator. The Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter.

JAMS Comprehensive Arbitration Rules and Procedures, Rule 11(b), available at: https://www.jamsadr.com/rules-comprehensive-arbitration/.[6]  This language is broad and encompasses questions of arbitrability, including but not limited to the "existence, interpretation, or scope" of the agreement and "who are proper Parties."  This language evinces an agreement for the arbitrator to decide questions of arbitrability and encompasses the specific arbitrability issues raised by Parrella and ILKB.

Together, the broad definition of "Dispute" and the decision to incorporate the JAMS rules evinces a "clear and unmistakable" intention to delegate arbitrability determinations to an arbitrator. *DDK Hotels*, 6 F. 4th at 318–19 (collecting cases); *see also Loc. One Sec. Officers Union v. New York Univ.*, No. 19 Civ. 3143 (JPO), 2019 WL 4254026, at *4 (S.D.N.Y. Sept. 9, 2019) (finding clear and

---

[6] The JAMS Streamlined Arbitration Rules and Procedures contain the same language. *See* Rule 8(b), available at: https://www.jamsadr.com/rules-streamlined-arbitration/.

unmistakable intent to delegate arbitrability where collective bargaining agreement required arbitration of "any" difference between the parties as to the meaning of any of its provisions); *Shaw*, 322 F.3d at 121–22 (finding clear and unmistakable intent to delegate arbitrability where agreement stated all disputes "concerning or arising under" agreement would be submitted to arbitration and incorporated rules that assigned questions of arbitrability to an arbitrator).  The Court thus finds that the parties to the contract, Orange Rabbit and ILKB, did clearly and unmistakably intend to delegate questions of arbitrability to an arbitrator, and that the Arbitrator's decision regarding both the agreement to arbitrate and the merits of the arbitrability claims are accordingly entitled to deference under FAA § 10(a)(4).

### 2.    By Participating in the Arbitration, Parrella Waived His Right to Object to Arbitrability and Demonstrated His Intent to Arbitrate.

The Franchise Agreement was only signed on behalf of the corporate entities, Orange Rabbit and ILKB, not the individuals.[7]  As discussed above, questions of arbitrability are delegable via contract, but *non-signatories* cannot ordinarily be found to have made a "clear and unmistakable" delegation based on a contract they never signed.  *See First Options*, 514 U.S. at 946.  Determining whether non-signatories can compel arbitration (Giacopelli) or be compelled to arbitrate (Parrella) is a question typically reserved for the court.  *See Data-Stream AS/RS Techs., LLC v. China Int'l Marine Containers, Ltd.*, No. 02 Civ. 6530 (JFK), 2003 WL 22519456, at *3 (S.D.N.Y. Nov. 6, 2003) (citing *Orion Shipping & Trading Co. v. E. States Petroleum Corp.*, 312 F.2d 299, 301 (2d Cir. 1963)).  In some circumstances, an arbitrator could exceed his or her power by compelling a non-party to arbitrate.  *See id.*

The Second Circuit, however, has held an agreement to arbitrate can be implied from a party's conduct in the arbitration proceedings.  *See Gvozdenovic v. United Air Lines*, 933 F.2d 1100, 1103 (2d Cir. 1991) ("We hold that, because appellants participated voluntarily and actively in the arbitration

---

[7] Giacopelli and Ferrari signed the agreement in their official capacities.  *See* Franchise Agreement at 38.  Under New York law, a person who signs a contract with an arbitration clause in his official capacity cannot be compelled to arbitrate in his individual capacity. *See JMT Bros. Realty, LLC v. First Realty Builders, Inc.*, 51 A.D.3d 453, 455 (N.Y. App. Div. 2008).

process, they are bound by its outcome and the district court therefore properly dismissed their petition to vacate the award."). In other words, "if a party participates in arbitration proceedings without making a timely objection to the submission of the dispute to arbitration, that party may be found to have waived its right to object to the arbitration." *Opals on Ice Lingerie v. Bodylines*, *Inc.*, 320 F.3d 362, 368 (2d Cir. 2003); *see also Time Warner Cable of New York City LLC v. Int'l Bhd. of Elec. Workers, AFL CIO, Loc. Union No. 3*, 684 F. App'x 68, 71 (2d Cir. 2017)). Indeed, numerous judges in this court found non-signatories to have waived objections to the arbitration and demonstrated an intent to arbitrate arbitrability where they failed to raise objections before the arbitrator and participated in the arbitration. *See Stone v. Theatrical Inv. Corp.*, 64 F. Supp. 3d 527, 533–34 (S.D.N.Y. 2014) (finding president and sole shareholder who had not signed agreement waived right to challenge arbitrator's jurisdiction by participating in arbitration and demanding individual relief); *Sands Bros. & Co. v. Zipper*, No. 03 Civ. 7731 (VM), 2003 WL 22439789 (S.D.N.Y. Oct. 27, 2003) (finding successor company that waited until after discovery to raise issues of arbitrability had waived its right to object); *Data-Stream*, 2003 WL 22519456, at *3 (S.D.N.Y. Nov. 6, 2003) (finding non-signatory parent company who had participated in arbitration and offered its own claims had "effectively waived its right to claim that it should not be a party to the arbitration"). Conversely, courts have found parties who made clear and consistent objections to arbitrability while participating in arbitration did not evince a clear intent to have the arbitrator decide issues of arbitrability. *See First Options*, 514 U.S. at 946 (finding individuals who objected to arbitrators' jurisdiction had not waived right to have court review determination); *Dedon GmbH v. Janus et Cie*, 411 F. App'x 361, 364 (2d Cir. 2011) (finding no waiver where the party's arguments to the arbitrator were "replete" with objections to arbitrator's jurisdiction). Interpreting participation as an agreement to arbitrate serves the twin goals of the FAA—settling disputes efficiently and avoiding protracted litigation—by ensuring participants cannot have a second bite at the apple in district court should they lose in arbitration.

Here, Parrella actively participated in the arbitration for nine months before challenging arbitrability. *See* Scheduling Order No. 2 at 9 (attorney for Parrella and ILKB moved to dismiss the arbitration demand in April 2019, which the Arbitrator denied in part on July 6, 2019). Not only did he actively defend himself—filing an answer that raised ten affirmative defenses to the substantive charges—but he also brought his own crossclaims against Scott Ferrari, another non-signatory.[8] *See* Answer at 2–4. Moreover, the Arbitrator explicitly invited Parrella and the other individuals to raise a challenge to arbitrability during the arbitration, stating in a scheduling order that "[i]f respondents intend to move to dismiss Messrs. Parrella and Healy for lack of arbitrability, they are to file their motion by September 19, 2019." Scheduling Order No. 5 at 4.

Parrella failed to raise an objection either to the arbitrability as to him as an individual, or to the Arbitrator's authority to decide arbitrability. To support his contention that the arbitrability argument was preserved, Parrella points to the following language in the arbitration answer: "Claimants' claims are barred, in whole or in part, by the terms of the parties' Franchise Agreement." *See* Lester Ex. E at 2; Pet. Reply Mem., Dkt. 28, at 19. This single, generic reservation, however, is insufficient to state an objection to arbitrability. *See S & G Flooring, Inc. v. New York City Dist. Counsel of Carpenters Pension Fund*, No. 09 Civ. 2836, 2009 WL 4931045, at *5 (S.D.N.Y. Dec. 21, 2009) ("A simple statement of reservation of rights is not enough, however, but rather a 'forceful objection' is necessary to indicate an unwillingness to submit to arbitration."). Rather than "forcefully" object, Parrella continued to participate in the arbitration; his first challenge to the arbitrability of the contract with respect to him as an individual was made after the arbitration hearing had terminated. *See* Lester Decl. Ex. J. Parrella's post-hearing brief likewise neglected to make this argument, merely challenging Giacopelli and Orange Rabbit's standing to bring the arbitration, the "regularity of these proceedings," and the arbitrability of the contract as to him as an individual—not whether the Arbitrator should have decided arbitrability.

---

[8] Ferrari signed the contract on behalf of ILKB, but not on behalf of himself.

*See* Lester Decl. Ex. M at 8.  Indeed, the argument that a court and not the arbitrator was the proper body to decide arbitrability was not raised until Parrella's reply memorandum in this proceeding.  Pet. Reply Mem., Dkt. 28, at 21.

To the extent Parrella raised questions regarding arbitrability, he did so without objection to the Arbitrator's power to decide them.  From the 2019 arbitration demand onward, he had ample opportunity to argue to the Arbitrator that arbitration was the wrong forum, refuse to submit to arbitration, or to seek a stay in federal court.  Instead, Parrella affirmatively litigated the merits of the dispute, failed to participate for several months, and then returned after the hearing had concluded to relitigate the merits of the dispute and arbitrability, all before the Arbitrator.  He therefore agreed to be bound by the Arbitrator's decision.  Having lost before the Arbitrator, Parrella cannot now make a new argument to this Court that the Arbitrator was never empowered to compel him to arbitrate as a non-signatory.  Accordingly, the Arbitrator's decisions as to the arbitrability of the contract with respect to Parrella and Giacopelli will be evaluated under Section 10(a)(4).[9]

## B.    Review of the Arbitrator's Decisions on Arbitrability Questions

### 1.    The Arbitrability of Claims Against Parrella

Parrella and ILKB assert that the Arbitrator acted beyond the scope of his powers in arbitrating the claims against Parrella because Parrella was not party to the Franchise Agreement and did not otherwise consent to arbitration.  Resp. Mem. at 18.

The Arbitrator determined that Parrella was subject to arbitration for essentially the same reasons this Court found Parrella had waived his objection to the Arbitrator deciding arbitrability.  The Arbitrator cited to *Opals on Ice Lingerie*, 320 F.3d at 368, and cases from this District that state a party's conduct

---

[9] The result would be the same under the doctrine of assumption, which permits a non-signatory to be compelled to arbitrate "if its subsequent conduct indicates that it is assuming the obligation to arbitrate."  *See Thomson-CSF, S.A. v. Am. Arb. Ass'n*, 64 F.3d 773, 776–77 (2d Cir. 1995).  Here, Parrella's participation in the arbitration supports a finding that he manifested a clear intent to arbitrate.  *Cf. Castlewood (US), Inc. v. Nat'l Indem. Co.*, No. 06 Civ. 6842 (KMK), 2006 WL 3026039, at *5 (S.D.N.Y. Oct. 24, 2006).

can indicate an intent to arbitrate. *See* Scheduling Order No. 23 at 8–9. After summarizing the law and Parrella's conduct, the Arbitrator concluded that Parrella was a proper participant. *See id.* at 8–12; *see also* Final Award at 19. When the Arbitrator determined Parrella was subject to the arbitration, he was "arguably construing or applying the contract and acting within the scope of his authority," *Jock*, 646 F.3d at 122, and applying established law, not his "own brand of industrial justice." *Stolt-Nielsen*, 559 U.S. at 671. Accordingly, the award against Parrella as an individual is not a valid basis on which to vacate.

### 2.  The Arbitrability of Giacopelli's Claims

Parrella and ILKB similarly assert that because Giacopelli did not sign the Franchise Agreement, the Arbitrator exceeded the scope of his authority in arbitrating Giacopelli's claims. To be clear, Giacopelli does not challenge his own participation as an individual in the arbitration proceedings; rather Parrella and ILKB challenge their consent to arbitrate with Giacopelli, a non-signatory.

The broad delegation of arbitrability issues to the arbitrator in the Franchise Agreement also encompasses this issue. Specifically, the JAMS rules it incorporates provide that Arbitrators should decide "proper Parties" to the dispute. The Arbitrator's decision on this issue is thus entitled to deference under Section 10(a)(4).

As an initial matter, because Parrella and ILKB did not raise this argument prior to their April 2020 post-hearing briefs, they waived any objection to Giacopelli's inclusion in the arbitration. Despite this waiver, the Arbitrator nonetheless considered whether Giacopelli and Orange Rabbit were proper parties and concluded they were because their claims were related. This basis was reasonable grounds for a ruling as to who constituted proper parties, and not the Arbitrator's "own brand of industrial justice." *Stolt-Nielsen*, 559 U.S. at 671. Indeed, the test articulated by the Second Circuit for evaluating when non-signatories can compel arbitration against signatories is based on relatedness. *See JLM Industries v. Stolt-Nielsen S.A.*, 387 F.3d 163, 177–78 (2d Cir. 2004). Either ground is sufficient

justification under the deferential standard of Section 10(a)(4).  The Court thus finds that the Arbitrator, in adjudicating Giacopelli's claims, was "arguably construing or applying the contract and acting within the scope of his authority," even if Giacopelli himself was not party to the Franchise Agreement.  *Jock*, 646 F.3d at 122.  Accordingly, Parrella and ILKB's application to vacate the award on this basis under Section 10(a)(4) is denied.

### 3.        Claims by Multiple Plaintiffs

Parrella and ILKB next contend that the Arbitrator exceeded the scope of his authority in arbitrating the claims of two plaintiffs in one arbitration because Section 14.2(b) of the Franchise Agreement provides, in relevant part, that "[a]rbitration proceedings will be conducted individually by a single plaintiff, and not as a class or by multiple plaintiffs in one action."  Pet. Mem. at 21.  In his Final Award, the Arbitrator addressed this argument and rejected it, concluding that "this provision [of the Franchise Agreement was] intended to preclude arbitrations by multiple interested parties who have separate claims to assert against ILKB."  Final Award at 21 n.16.  Claimants Giacopelli and Orange Rabbit, by contrast, were "jointly presenting one set of claims, on behalf of one franchisee, in compliance with the cited provision."  *Id*.

As Parrella and ILKB rightly note, it is unclear from the face of the Agreement whether two plaintiffs bringing one set of claims on behalf of one franchise would violate this provision.  Nonetheless, the question before the Court at this juncture is not whether the Arbitrator was correct on the merits. Rather, Second Circuit precedent dictates that an arbitration award should be enforced, even if the court disagrees with it.  *See Jock*, 646 F.3d at 122 ("[A] court's conviction that the arbitrator has committed serious error in resolving the disputed issue does not suffice to overturn his decision.") (citation omitted). The award should be affirmed so long as there is "a barely colorable justification for the outcome reached."  *Rich v. Spartis*, 516 F.3d 75, 81 (2d Cir. 2008) (quoting *Landy Michaels Realty Corp. v. Local 32B-32J Serv. Employees Int'l*, 954 F.2d 794, 797 (2d Cir. 1992)).

The Arbitrator's conclusion was certainly colorable. "Under the traditional canon of both statutory and contract construction, *noscitur a sociis*, 'a word is known by the company it keeps.'" *Bobrow Palumbo Sales, Inc. v. Broan-Nutone, LLC*, 549 F. Supp. 2d 249, 273 (E.D.N.Y. 2008) (quoting *Gustafson v. Alloyd Co.*, 513 U.S. 561, 575 (1995)). "According to this principle, the meaning of an unclear word or phrase should be determined by the words immediately surrounding it." *Id*. (internal quotations and citations omitted). Here, because the term "multiple plaintiffs" is proceeded by "a class," it is logical to conclude that the prohibition is intended to refer to claims brought by multiple franchisees, rather than a single claim brought by a franchisee and his business. Accordingly, the Court concludes that the Arbitrator did not act beyond the scope of his authority in allowing Giacopelli and Orange Rabbit to proceed in a single arbitration, and the application to vacate the arbitration award on this basis under Section 10(a)(4) is denied.

### 4.    Attorneys' Fees

Lastly, Parrella and ILKB allege that the Arbitrator exceeded his authority in awarding attorneys' fees and costs for Giacopelli and Orange Rabbit. Pet. Mem. at 23. They base this claim on two grounds. First, they assert that while the Franchise Agreement authorized the Arbitrator to award fees, it did not authorize him to determine the proper amount of fees. *Id*. Second, they contend that the Arbitrator erred in finding fees warranted under New York Franchise Sales Act § 691 because that statute only permits attorneys' fees upon a grant of rescission. *Id*. at 24–25. Both of these arguments fail.

It is uncontested that the Franchise Agreement permits the Arbitrator to award the prevailing party legal fees and expenses. Franchise Agreement at 31 (§ 14.4). Section 14.2(c) of the Franchise Agreement further grants the Arbitrator "the right to award or include in the award any relief that the arbitrator deems proper in the circumstances." *Id*. Together, these provisions make it at least colorable—if not clear—that the Arbitrator had the authority under the Franchise Agreement to determine the proper amount of attorneys' fees to award.

Parrella and ILKB's interpretation of Section 691, moreover, is belied both by the text of the statute itself, as well as the relevant case law interpreting it.  Section 691 of the New York Franchise Sales Act provides:

> A person who offers or sells a franchise in violation of section six hundred eighty-three, six hundred eighty-four or six hundred eighty-seven of this article is liable to the person purchasing the franchise for damages and, if such violation as willful and material, for rescission, with interest at six percent per year from the date of purchase, and reasonable attorney fees and court costs.

N.Y. Gen. Bus. Law § 691(1).  Parrella and ILKB appear to read this provision as setting three conditions precedent (willfulness, materiality, and rescission) for one outcome (attorneys' fees).  This reading misinterprets the statute.  Instead, the statute establishes two conditions precedent (willfulness and materiality) for two outcomes (rescission and/or attorney fees).  Relevant case law supports this interpretation. *See Kroshnyi v. U.S. Pack Courier Servs., Inc.*, 771 F.3d 93, 108 (2d Cir. 2014) (affirming jury instructions that required finding conduct was willful and material in order to grant rescission for Section 691 claim); *Burgers Bar Five Towns, LLC v. Burger Holdings Corp.*, 71 A.D.3d 939, 941, 897 N.Y.S.2d 502, 504 (2010) ("[T]he plaintiff …must prove that the violation [of § 691] was 'willful and material' in order to be entitled to an award of an attorney's fees.").

Accordingly, the Court concludes that the Arbitrator did not act beyond the scope of his authority in awarding attorneys' fees.

**III.    Petition to Confirm**

Giacopelli and Orange Rabbit have moved for the Court to confirm the arbitration award.  Resp. Mem. 26–27.  The FAA permits a party to apply to the district court "for an order confirming the award, and thereupon the court must grant such an order unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of this title."  9 U.S.C. § 9; *see also Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 582 (2008).  For the reasons articulated above, Parrella and ILKB have failed to show that the arbitration award should be vacated, modified, or corrected.  The remaining cross-defendants,

Healy and Ferrari, have not opposed the petition to confirm the arbitration award.  Accordingly, the cross motion to confirm the Award is granted.

## CONCLUSION

For the foregoing reasons, the motion to confirm the arbitration award is granted, and the motion to vacate the award is denied.  The Clerk of Court is respectfully directed to terminate the motion pending at docket entry 3, and to close this case.

SO ORDERED.

Dated:     September 29, 2021
           New York, New York

_____
RONNIE ABRAMS
United States District Judge